UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BAIT PRODUCTIONS PTY LTD.,

     Plaintiff,

v.                     Case No. 8:13-cv-0169-T-33AEP

ANGELICA MURRAY,

     Defendant.
_____/

**ORDER**

    This matter comes before the Court in consideration of Plaintiff Bait Productions Pty Ltd.'s Motion for Default Judgment (Doc. # 16), filed on July 25, 2013. For the reasons that follow, the Court grants Bait Productions' Motion requesting permanent injunction, statutory damages, and attorney's fees and costs.

**I.   Factual History**

    Bait Productions holds the copyright registration on the motion picture "Bait a/k/a Bait 3D," which includes copyright registration number PAu 3-553-375.[1] (Doc. # 1 at ¶ 18; Ex. A). "Under the [United States] Copyright Act, Bait Productions owns all right, title, and interests in the

---

[1]    For uniformity, the Court will refer to the motion picture in question – "Bait a/k/a Bait 3D" – as "the motion picture" for the remainder of this Order.

[PAu 3-553-375] copyright, including the right to sue for past infringement." (Id. at ¶ 19).

In its Complaint, Bait Productions alleges that on September 23, 2012, Defendant Angelica Murray unlawfully reproduced and distributed the motion picture by means of an interactive "peer to peer" file transfer protocol called BitTorrent. (Id. at ¶¶ 6, 8). Bait Productions recorded Murray publishing the motion picture via BitTorrent when Bait Productions' investigator downloaded the motion picture from Murray. (Id. at ¶ 22).

According to Bait Productions, Murray obtained a torrent file for the motion picture and loaded the file into BitTorrent. (Id. at ¶ 8). Once loaded, "[Murray's] BitTorrent program used the BitTorrent protocol to initiate simultaneous connections with hundreds of other users possessing and 'sharing' copies of digital media," which included the motion picture. (Id. at ¶ 9).

Bait Productions contends that each time Murray distributed a copy of the motion picture to others over the internet, particularly through BitTorrent, each recipient was able to distribute that copy to others without "degradation in sound or picture quality." (Id. at ¶ 15). Thus, Murray's distribution of even one copy of the motion

2

picture could result in "nearly instantaneous worldwide distribution to a limitless number of people." (Id.).

It is Bait Productions' position that "Murray republished and duplicated [the motion picture] in an effort to deprive [Bait Productions] of its exclusive rights in the motion picture." (Id. at ¶ 26). Furthermore, Murray's acts of infringement were "willful, intentional, and in disregard of and with indifference to the rights of Bait Productions." (Id. at ¶¶ 32, 38).

## II.  **Procedural History**

On January 16, 2013, Bait Productions filed a Complaint against Murray for copyright infringement and contributory copyright infringement under the United States Copyright Act. (Id. at ¶ 3). Murray failed to timely respond, and on June 6, 2013, the Clerk of the Court filed an Entry of Default. (Doc. # 13). Bait Productions subsequently filed the present Motion for Default Judgment on July 25, 2013. (Doc. # 16).

Bait Productions requests a permanent injunction against Murray enjoining her from directly or indirectly infringing Bait Productions' rights in the motion picture. (Doc. # 16 at 2-3). Bait Productions requests that this injunction include use of the internet to reproduce or copy

3

the motion picture, to distribute the motion picture, or to make the motion picture available for distribution to the public, unless Bait Productions provides Murray with a license or express authority. (Id.). Bait Productions also requests the Court require Murray to destroy all illegally downloaded copies of the motion picture on any computer hard drive or server and any copy of the motion picture transferred onto any physical medium or device in Murray's possession, custody, or control. (Id.). Additionally, Bait Productions seeks an award of statutory damages pursuant to 17 U.S.C. § 504 and an award of attorney's fees and costs pursuant to 17 U.S.C. § 505. (Id.).

## III. **Legal Standard**

Federal Rule of Civil Procedure 55(a) provides: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b)(2). DirecTV, Inc. v. Griffin, 290 F. Supp. 2d 1340, 1343 (M.D. Fla. 2003).

The mere entry of a default by the Clerk does not, in itself, warrant the Court entering a default judgment. See Tyco Fire & Sec. LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007)(citing Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). Rather, a defaulted defendant is only deemed to admit the plaintiff's well-pled allegations of fact. Id. Furthermore, a default judgment bars the defendant from contesting those facts on appeal. Id. Therefore, before entering a default judgment for damages, a court must ensure that the well-pled allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought. Id.

"Once liability is established, the court turns to the issue of relief." Enpat, Inc. v. Budnic, 773 F. Supp. 2d 1311, 1313 (M.D. Fla. 2011). "Pursuant to Federal Rule of Civil Procedure 54(c),'[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings,' and a court may conduct hearings when it needs to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other

matter." <u>Enpat</u>, 773 F. Supp. 2d at 1313 (citing Fed. R. Civ. P. 55(b)(2)).

**IV.   <u>Liability</u>**

   **A.   <u>Copyright Infringement</u>**

   To establish a prima facie case of copyright infringement, two elements must be proven: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.</u>, 499 U.S. 340, 361 (1991).

   To satisfy the first element, "a plaintiff must prove that the work . . . is original and that the plaintiff complied with applicable statutory formalities." <u>Bateman v. Mnemonics, Inc.</u>, 79 F.3d 1532, 1541 (11th Cir. 1996) (quoting <u>Lotus Dev. Corp. v. Borland Int'l, Inc.</u>, 49 F.3d 807, 813 (1st Cir. 1995)). In a judicial proceeding, "a certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Once the plaintiff produces a certificate of registration, "the burden shifts to the defendant to

demonstrate why the claim of copyright is invalid."
Bateman, 79 F.3d at 1541.

To satisfy the second element, the plaintiff must establish that the "alleged infringer actually copied plaintiff's copyrighted material." Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1233 (11th Cir. 2010). However, factual proof of copying is only part of satisfying the second element; "the plaintiff must also respond to any proof advanced by the defendant [signifying] that the portion of the work actually taken does not satisfy the constitutional requirement of originality." Id. "If a plaintiff survives a challenge to the originality requirement, they must also prove that 'the copying of copyrighted material was so extensive that it rendered the offending and copyrighted works substantially similar.'" Id. (quoting Lotus, 49 F.3d at 813).

Because the Clerk has entered default against Murray (Doc. # 13), this Court deems Murray to have admitted to Bait Productions' well-pled allegations of fact. Regarding the first element, Bait Productions holds the copyright registration on the motion picture. (Doc. # 1 at ¶ 18; Ex. A). Bait Productions has provided the Court with a copy of the certificate of registration, which has an effective

7

date of April 19, 2011. (Id. at Ex. A). The effective date is "before or within five years after the first publication of the work,"[2] and therefore, can act as "prima facie evidence of the validity of the copyright and the facts stated in the certificate." 17 U.S.C. § 410(c). As a result, the Court finds that Bait Productions has satisfied the first element necessary to prove copyright infringement.

Concerning the second element, Bait Productions has provided the Court with factual proof that Murray copied the motion picture: Bait Productions recorded Murray using an IP address on or about September 23, 2012, to download a torrent file for the motion picture. (Doc. # 1 at ¶¶ 8, 22). Because Murray has not responded in this action, Bait Productions need not respond to any proof contradicting its claim of originality concerning the motion picture. Finally, the Court must accept Bait Productions' contention that each time Murray distributed a copy of the motion picture to others over the internet, particularly via BitTorrent, each recipient was able to distribute that copy to others without "degradation in sound or picture

---

[2]   The certificate of registration provided by Bait Productions indicates the motion picture had a completion/publication date of 2010. (Doc. # 1 at Ex. A).

8

quality." (Doc. # 1 at ¶ 15). Accordingly, Bait Productions has satisfied the requirement of proving the "copying of copyrighted material was so extensive that it rendered the offending and copyrighted works substantially similar." Latimer, 601 F.3d at 1233 (quoting Lotus, 49 F.3d at 813). Therefore, this Court finds that Bait Productions has successfully satisfied the second element necessary to prove copyright infringement.

### B.   Contributory Copyright Infringement

One commits contributory copyright infringement by intentionally inducing or encouraging direct infringement. Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005); see Casella v. Morris, 820 F.2d 362, 365 (11th Cir. 1987)(stating "the test for contributory infringement has been formulated as 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another.'")(quoting Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971)).

Because Murray has not responded in this action, the Court accepts Bait Productions' factual allegations as true. On or about September 23, 2012, Murray loaded a torrent file for the motion picture onto her computer.

9

(Doc. # 1 at ¶ 8). Because of Murray's involvement in BitTorrent, Murray could "initiate simultaneous connections with hundreds of other users possessing and 'sharing' copies of digital media," which included the motion picture. (Id. at ¶ 9). Bait Productions recorded Murray publishing the motion picture via BitTorrent when Bait Productions' investigator downloaded a copy of the motion picture from Murray. (Id. at ¶ 22). As a recipient, the investigator was then "able to distribute that copy to others without "degradation in sound or picture quality," potentially causing "nearly instantaneous worldwide distribution [of the motion picture] to a limitless number of people." (Id. at ¶ 15). Based on the well-pled allegations set forth in the Complaint, the Court finds that Murray had sufficient knowledge of her own infringing activity as well as the infringing conduct of others to be held liable for contributory copyright infringement.

In view of the Court finding the factual allegations in Bait Productions' Complaint, taken as true, sufficient to establish that Murray is liable for copyright infringement and contributory copyright infringement of the motion picture, this Court will proceed to the issue of relief.

10

V.     **Relief Requested**

   A.     **Injunction**

   Pursuant to 17 U.S.C. § 502 (a), this court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, LLC., 547 U.S. 388, 391 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." Id.

   In its Complaint, Bait Productions did not provide the Court with any evidence of actual damage suffered as a result of Murray's infringement of the motion picture, specifically the amount of revenue lost, if any. However, Bait Productions has sufficiently established that Murray's conduct "is causing and, unless enjoined and restrained by

this Court, will continue to cause Bait Productions great and irreparable injury." (Doc. # 1 at ¶¶ 34, 40). Additionally, the Court finds that due to the possibility of future infringement of the motion picture by Murray and others, monetary damages alone are inadequate to compensate Bait Productions for any injury it has sustained or will potentially sustain in the future. Furthermore, Murray has not provided the Court with any evidence purporting to show her claim to the motion picture; therefore, Murray would suffer minimal, if any, hardship as a result of the injunction being issued. On the other hand, Bait Productions, as the holder of the copyright of the motion picture (Doc. # 1 at ¶ 18; Ex. A), could sustain hardship, specifically lost revenue, if Murray is not enjoined from engaging in the infringing activity. Finally, there is no indication that the public interest would be disserved by the issuance of a permanent injunction against Murray.

Therefore, upon review of the well-pled allegations, taken as true, the Court finds that granting a permanent injunction against Murray is proper. Accordingly, Murray is enjoined from directly or indirectly infringing Bait Productions' rights in the motion picture. This includes use of the internet to reproduce or copy the motion

12

picture, to distribute the motion picture, or to make the motion picture available for distribution to the public, unless Murray receives a license or express authority from Bait Productions. Furthermore, Murray is required to destroy all illegally downloaded copies of the motion picture on any computer hard drive or server and any copy of the motion picture transferred onto any physical medium or device in Murray's possession, custody, or control.

### B.   <u>Statutory Damages</u>

The United States Copyright Act allows a copyright owner to recover statutory damages for an infringement. In awarding statutory damages under the Copyright Act, for each work infringed by any one infringer that is liable individually, or for which any two or more infringers are liable jointly and severally, the Court generally may award not less than $750 or more than $30,000, "as the Court considers just." 17 U.S.C. § 504(c)(1). However, the statutory damages to be awarded under the Copyright Act may be reduced to as low as $200 per work infringed per defendant where the infringer sustains the burden of proving that he was not aware and had no reason to believe that his acts constituted copyright infringement. 17 U.S.C. § 504(c)(2). Additionally, the Court may increase the

statutory damages to as much as $150,000 per work infringed
where the copyright owner sustains the burden of proving
that the infringement was committed willfully. Id.

"The Court has wide discretion to set an amount of
statutory damages." Tiffany (NJ), LLC v. Dongping, No. 10-
61214-civ, 2010 WL 4450451, at *6 (S.D. Fla. Oct. 29,
2010); see Cable/Home Commc'n Corp. v. Network Prod. Inc.,
902 F. 2d 829, 852 (11th Cir. 1990)(quoting Harris v. Emus
Records Corp., 734 F. 2d 1329, 1335 (9th Cir. 1984) when it
stated "the court has wide discretion in determining the
amount of statutory damages to be awarded, constrained only
by the specified maxima and minima."). In determining a
statutory damages award under the Copyright Act, courts
consider factors such as:

> (1) the expenses saved and the profits reaped;
> (2) the revenues lost by the plaintiff; (3) the
> value of the copyright; (4) the deterrent effect
> on others besides the defendant; (5) whether the
> defendant's conduct was innocent or willful; (6)
> whether a defendant has cooperated in providing
> particular records from which to assess the value
> of the infringing material produced; and (7) the
> potential for discouraging the defendant.

Rolex Watch U.S.A., Inc. v. Lynch, No. 2:12-cv-542-FTM-38,
2013 WL 2897939, at *5 (M.D. Fla. June 12, 2013).

Although the Court believes that an award at the
minimum level would be an insufficient deterrent for Murray

14

and others engaged in this infringing activity, the Court finds that several of the factors to be considered, specifically Bait Productions' lack of evidence regarding lost revenue, require a statutory damages award toward the lower end of the spectrum.

### i.   Expenses Saved and Profits Reaped

Neither party has provided the Court with information regarding expenses saved or profits generated from Murray unlawfully possessing or distributing the motion picture. However, the Court can presume that if Murray reaped any profits as a result of possession or distribution of the motion picture, the profits resulted without incurring the costs and expenses associated with producing the motion picture.

### ii.   Revenues Lost by Bait Productions

"'Statutory damages are not intended to provide a plaintiff with a windfall recovery;' they should bear some relationship to the actual damages suffered." Clever Covers, Inc. v. Sw. Fla. Storm Def., LLC, 554 F. Supp. 2d 1303, 1313 (M.D. Fla. 2008)(quoting Peer Int'l Corp. v. Luna Records, Inc., 887 F. Supp. 560, 568-69 (S.D.N.Y. 1995)). While the Court is satisfied with Bait Productions' evidence of Murray's infringement, Bait Productions has

failed to provide any evidence of its own lost sales, profits, or licensing fees as a result of the infringement.

### iii.  **Value of the Copyright**

Bait Productions has not provided the Court with any information that would assist in evaluating the value of copyright registration number PAu 3-553-375. Therefore, this factor need not be further discussed.

### iv.  **Deterrent Effect on Others Besides Murray**

The Court recognizes that with the popularity of the internet, the potential for future infringement of the motion picture by others besides Murray is relatively high. However, Bait Productions did not provide the Court with any evidence illustrating the value of the copyright, revenues lost, nor profits gained by Murray. Absent such proof by Bait Productions, the Court does not find it appropriate to impose a statutory damages award at the maximum end of the spectrum in an effort to deter future infringement.

### v.  **Whether Murray's Conduct was Innocent or Willful**

Bait Productions contends that Murray's acts of infringement were "willful, intentional, and in disregard of and with indifference to the rights of Bait

Productions." (Doc. # 1 at ¶¶ 32, 38). As a result of Murray's default, the Court may infer Murray willfully engaged in copyright infringement against Bait Productions. See <u>Arista Records, Inc. v. Beker Enters., Inc.</u>, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003)(inferring that the alleged infringement was willful, as a result of defendant's default, based on allegations of willfulness in plaintiff's complaint). However, Bait Productions is not automatically entitled to the maximum amount of statutory damages merely because it has shown that Murray acted willfully; the Court must still consider the other factors in making its determination. See <u>Clever Covers, Inc.</u>, 554 F. Supp. 2d at 1313.

### vi.   **Whether Murray Has Cooperated in Providing Particular Records From Which to Assess the Value of the Infringing Material Produced**

Murray has not appeared or responded in this action and has not provided the Court with any records to assess the value of the motion picture.

### vii.  **Potential for Discouraging Murray**

The Court recognizes that the imposition of statutory damages serves to sanction or punish defendants in order to deter wrongful conduct. See <u>St. Luke's Cataract & Laser</u>

Inst., P.A. v. Sanderson, 573 F.3d 1186, 1205 (11th Cir. 2009). Murray engaged in willful infringement of the motion picture, which warrants an increase in the statutory damages award. See 17 U.S.C. § 504(c)(2). However, the Court is mindful that Bait Productions has not provided the Court with any evidence showing actual damages suffered as a result of Murray's actions.

Upon due consideration of the aforementioned facts, the Court determines an award of $25,000 in statutory damages adequately compensates Bait Productions. See Disney Enters., Inc. v. Delane, 446 F. Supp. 2d 402, 407 (D. Md. 2006)(concluding $6,500 per infringement was warranted because although there was no evidence that defendant profited, he did make plaintiff's copyrighted material available using a BitTorrent tracker, thus, enabling infringement on a wide scale and impacting plaintiff's potential revenue); Clever Covers, Inc., 554 F. Supp. 2d at 1313(determining $31,000 per infringed copyright was warranted rather than statutory maximum of $150,000 for willful infringement when plaintiff failed to provide the court with evidence of its lost sales, profits, or licensing fees); see also Peer Int'l Corp., 887 F. Supp. at 568-69 (limiting its award of statutory damages to $10,000-

18

$25,000 when parties did not provide the court with an estimation of the fair market value of the rights infringed, revenues lost by the plaintiffs, nor the profits gained by the defendant). Further, the Court is satisfied that the statutory damages, coupled with the injunctive relief ordered herein, will serve as a sufficient deterrent against any future wrongful conduct by Murray and others engaging in such conduct.

## C.   **Attorney's Fees and Costs**

In addressing attorney's fees and costs, 17 U.S.C. § 505, states:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

Bait Productions has requested $1,275 in attorney's fees and $400 in costs. (Doc. # 16 at 3, 10-11). According to Bait Productions' counsel, he spent three hours performing legal services at a rate of $425 per hour. (Id. at Ex. 2 ¶ 8). Furthermore, Bait Productions incurred $400 in costs to bring this action against Murray, which includes a $350 filing fee and $50 process server fee. (Doc. # 16 at Ex. 2 ¶ 9). Upon review of Bait Productions'

Motion and accompanying Fee Declaration, the Court determines that the attorney's fees and costs requested are reasonable under the circumstances of this case.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Bait Productions Pty Ltd.'s Motion for Default Judgment (Doc. # 16) is **GRANTED**.

(2) Bait Productions Pty Ltd.'s request for a permanent injunction against Angelica Murray is **GRANTED**. Angelica Murray is enjoined from directly or indirectly infringing Bait Productions Pty Ltd.'s rights in the motion picture. This includes use of the internet to reproduce or copy the motion picture, to distribute the motion picture, or to make the motion picture available for distribution to the public, unless Angelica Murray receives a license or express authority from Bait Productions Pty Ltd. Furthermore, Angelica Murray is required to destroy all illegally downloaded copies of the motion picture on any computer hard drive or server and any copy of the motion picture transferred onto any physical medium or device in Angelica Murray's possession, custody, or control.

(3)   Bait Productions Pty Ltd.'s request for statutory damages is **GRANTED**. The Court imposes statutory damages in the amount of $25,000 against Angelica Murray.

(4)   Bait Productions Pty Ltd.'s request for attorney's fees and costs is **GRANTED**. Angelica Murray is ordered to pay Bait Productions Pty Ltd. $1,275 in attorney's fees and $400 in costs.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 23rd day of August, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel and Parties of Record